DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jose Velez, appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant met Heather Whitman, nka Heather Velez ("Heather"), in June of 2003. She had two children at the time, including the child-victim, A.W. Both Appellant and Heather were HIV positive. The parties moved in together in July of 2003, and Heather became pregnant in August of 2003. They married on February 28, 2004. During this time, the family moved from their apartment complex to a "yellow house" in the City of Lorain, Ohio. From February to April *Page 2 
of 2004, Heather worked during the night. While she was gone, Appellant or another member of the family would watch her children.
 {¶ 3} In March of 2004, A.W. slipped on the edge of the bathtub and suffered an injury to her vaginal area. This occurred while she was in Appellant's care. Appellant informed Heather of this injury, and the next day she took A.W. to visit Dr. Onyeneke, a family practice physician. Dr. Onyeneke diagnosed a sprained perineum. In April of 2004, Heather had A.W. tested for HIV, informing social worker Teresa Yuzon ("Yuzon") that A.W. had cut herself while playing with one of her razors. However, A.W. informed Yuzon that Appellant had put his finger "in there." Due to A.W.'s statements, Yuzon referred Heather to Dr. Crotser, a pediatrician. In June of 2004, the Lorain Police Department and the Lorain County Children Services investigated the allegation that A.W. made to Yuzon. The investigation was closed when A.W. would not speak to officers and the allegations were left unsubstantiated.
 {¶ 4} In November of 2005, A.W. informed Heather that Appellant had sexually abused her. In December of 2005, she took A.W. to Applewood Center to enroll in counseling. Records from Applewood showed that both A.W. and Heather made allegations against Appellant. She took A.W. to Dr. Essel, who confirmed that she had been vaginally penetrated. A.W. informed Dr. Essel that there was contact between her vagina and Appellant's penis. Heather took A.W. to a nurse practitioner to get a second opinion. The nurse practitioner confirmed *Page 3 
Dr. Essel's findings. In February of 2006, a sexual assault nurse from the NORD center in Lorain, Ohio examined A.W. The nurse diagnosed a blunted posterior hymenal margin as a result of sexual assault by blunt force.
 {¶ 5} After learning that Appellant had been arrested for molesting A.W., M.S. a friend of Appellant's family, disclosed that she had had two sexual encounters with Appellant. According to M.S., in December of 2004, she was living with Appellant's sister, Alice Juarez ("Juarez"). During this time, Appellant and Heather had separated and Appellant was also living with his sister. Appellant asked M.S. to help him move something in the basement. M.S. agreed, despite being previously told not to go into the basement alone with Appellant. While in the basement, Appellant grabbed M.S., touched her arm and lower back and kissed her. He then proceeded to pull down her pants and have vaginal intercourse with her. He then told M.S. that if she told anyone about the incident she would get hurt. Two weeks later, Appellant again engaged in sexual intercourse with M.S. Appellant threatened her life if she told anyone about the incident.
 {¶ 6} Appellant was indicted on December 6, 2005, on one count of rape, in violation of R.C. 2907.02, one count of kidnapping with a sexual motivation specification, in violation of R.C. 2905.01, and one count of gross sexual imposition, a violation of R.C. 2907.05. These three charges involved only A.W. On January 10, 2006, after M.S. came forward, the indictment was supplemented. Appellant was charged with another count of rape of A.W. and one count of rape *Page 4 
of M.S.; one count for each victim of gross sexual imposition; one count for each victim of kidnapping with a sexual motivation specification; and one count for each victim of felonious assault, in violation of R.C.2903.11. On May 22, 2006, a hearing was held to determine if A.W. was competent to testify. The trial court deemed her competent. At the time of the trial, A.W. was seven years old and M.S. was 17.
 {¶ 7} Appellant waived his right to a jury trial, and the matter proceeded to a bench trial on July 10, 2006. On July 19, 2006, the trial court found Appellant guilty of two counts of rape; one count of kidnapping with a sexual motivation specification, one count of kidnapping, two counts of gross sexual imposition; and one count of felonious assault as to A.W. The trial court found Appellant guilty of one count of felonious assault as to M.S. Appellant was acquitted of the remaining charges as to M.S. Sentenced to life in prison, Appellant timely appealed his convictions, raising five assignments of error for our review.
 II. {¶ 8} Before we undertake the substance of Appellant's assignments of error, we find it necessary to address an issue that is relevant to all the underlying alleged errors. In the instant case, Appellant waived his right to a jury trial. As such, the case was tried to the bench. The Ohio Supreme Court has stated that it "indulges `*** in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at *Page 5 
its judgment unless it affirmatively appears to the contrary.'" (Citations omitted.) State v. Post (1987), 32 Ohio St.3d 380, 384.
 {¶ 9} A review of the record shows that the trial judge clearly relied on the testimony of the expert witnesses, specifically Dr. Crotser. The judge stated that
 "possibly the most compelling testimony in the sense that the testimony I think of Dr. Crotser was probably a lynchpin with regard to a good deal of this information[.] *** I came to the conclusion that based upon the expert testimony that the irregular hymen that was found on [A.W.] in December of 2005 was as a result of some penetration of her vaginal area. And that I believe that there was sufficient evidence presented by Dr. Crotser and Dr. Onyeneke that, in fact, had they been aware of certain information at the time they did their examination, Dr. Onyeneke in March of `04 and Crotser in April of `04, they could have possibly made more conclusive statements about what was observed and what was not observed and what should have been observed had the allegations been fully investigated at that time and the examinations had been as thorough as they ultimately were in `05 and in `06."
 {¶ 10} The judge did not specifically state any other evidence that he considered when he convicted Appellant of the charges from which Appellant appeals. With this presumption in mind, we turn to Appellant's assigned errors.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED [A.W.] TO BE COMPETENT TO TESTIFY AT TRIAL."
 {¶ 11} In his first assignment of error, Appellant contends that the trial court abused its discretion when it determined A.W. to be competent to testify at trial. We do not agree. *Page 6 
 {¶ 12} Initially, we note that Appellant did not object at his trial to the court's determination that A.W. was competent. The Ohio Supreme Court has "long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]" Id., quoting Crim.R. 52(B). We must note the distinction between the waiver of an objection and the forfeiture of an objection. Although the terms are frequently used interchangeably,
 "`[w]aiver is the intentional relinquishment or abandonment of a right, 52(B). On the other hand, forfeiture is a failure to preserve an objection[.] *** [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B).'" (Internal citations and quotations omitted.) State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642.
Therefore, where a party has forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made. State v. Hairston, 9th Dist. No. 05CA008768,2006-Ohio-4925, at ¶ 9; Crim.R. 52(B). Here, the trial court inquired into Appellant's position on the issue of A.W.'s competency. Rather than objecting, Appellant's counsel stated that "we'll leave it to the Court's discretion." Accordingly, our review is confined to a plain error analysis. We find that Appellant cannot make a showing of plain error *Page 7 
in this case. The Ohio Supreme Court has established five factors that a trial court must consider when determining whether a child is competent to testify:
 "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." State v. Frazier (1991), 61 Ohio St.3d 247, syllabus.
 {¶ 13} In the instant case, the trial court questioned A.W. at length with regard to her competency. At the conclusion of its voir dire, and without objection from defense counsel, the court stated that
 "[b]ased upon her knowledge of who her teacher is, what grade she is in, her birth date and other factual information, I do believe that she has sufficient competency with regard to the issue of having an intellectual capacity for observation, recollection and communication. With regard to the consciousness of the duty to speak the truth, I think she clearly understood the difference between *** truth and a lie, and that it's good to tell the truth and bad to tell a lie, and so I think she's sufficiently competent with regard to that issue."
Upon review, we find the record supports this conclusion. Accordingly, we do not find that the trial court plainly erred when it determined A.W. competent to testify. Therefore, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE THAT [A.W.] WAS INCOMPETENT, THEREBY DENYING APPELLANT HIS RIGHT TO COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION." *Page 8 
 {¶ 14} In his second assignment of error, Appellant argues that his trial counsel was ineffective for failing to argue that that A.W. was incompetent, thereby denying him his right to counsel pursuant to the U.S. Constitution. We do not agree.
 {¶ 15} In evaluating an ineffective assistance of counsel claim, this Court employs a two step process as described in Strickland v.Washington (1984), 466 U.S. 668, 687. First, the Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396, vacated in part on other grounds. Second, the Court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-142, citing Lytle, 48 Ohio St.2d at 396-397. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel.Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Appellant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687.
 {¶ 16} Appellant specifically argues that, but for counsel's failure to object to the competency of a seven year old child who is the alleged victim in a rape case, the outcome of the proceedings would have been different. We do not agree. *Page 9 
 {¶ 17} We have consistently held that "trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76; State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 24; State v. Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶ 74. Appellant's broad argument that "[t]here is no professional excuse for failure to make the argument, where, if successful would have eliminated the alleged victim's testimony from trial," falls short of satisfying his burden of proof that his counsel's failure to object was so serious as to deprive him of a fair trial. Again, we note that "[t]here are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel." State v. Diaz, 9th Dist. No. 04CA008573,2005-Ohio-3108, at ¶ 23 (finding that trial counsel's decisions not to object during a child competency hearing and not to cross-examine the child witness was within the realm of trial tactics), citing State v.Clayton (1980), 62 Ohio St.2d 45, 49 and State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541, at *9.
 {¶ 18} A reading of the record clearly indicates that Appellant's counsel's trial tactic involved a challenge of the victim's credibility on cross-examination. For example, trial counsel asked the victim the following:
 "Q: Well, what if I was to tell you that you've told at least two different stories about it? On one hand, you're saying that *Page 10 
[Appellant] didn't do anything, and, on the other hand, you're saying that he did do something. Now one is a truth and one is a lie; do you understand that?"
 {¶ 19} Assuming Appellant could show that his trial counsel's decision not to object to the competency determination was not a valid trial tactic, we would find he did not suffer the prejudice necessary to satisfy the second prong of the Strickland test. As we explained in Appellant's first assignment of error, we find no error in the trial court's determination that A.W. was competent. In light of our determination, we do not find that the result of Appellant's trial would have been different but for the lack of objection. Based upon the foregoing, we find that Appellant has failed to demonstrate ineffective assistance of counsel. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "VIDEOTAPE OF [A.W.'s] INTERVIEW WITH POLICE WAS IMPROPERLY USED TO REFRESH [A.W.'s] RECOLLECTION AT TRIAL, AND THE CONTENTS WERE IMPROPERLY USED AS SUBSTANTIVE EVIDENCE."
 {¶ 20} In his third assignment of error, Appellant argues that the videotape of A.W.'s interview with police was improperly used to refresh the child's recollection at trial, and the contents were improperly used as substantive evidence. We do not agree.
 {¶ 21} As Appellant points out in his brief, there was no objection below regarding the use of the videotape of A.W.'s previous discussions with investigators. Therefore, Appellant has forfeited any objection to the admission of *Page 11 
this tape on appeal. Davidson, 79 Ohio St.3d at 121. Appellant does not argue either that the admission of the videotape was plain error or that the trial judge considered any evidence that was irrelevant, immaterial or incompetent. As we stated above, upon reaching his decision, the judge noted that he placed heavy emphasis on the expert testimony in this case. Further, it is not clear from the record which portions of this videotape the trial judge actually witnessed. Our review of the record shows that a portion of the tape was played for A.W. on a "little portable DVD player." We cannot say for certain whether the trial judge actually viewed the tape himself, let alone that he relied on it as substantive evidence. Therefore, Appellant has not fulfilled his burden to overcome forfeiture or the presumption that the trial judge only considered admissible evidence.
 {¶ 22} We note that Appellant briefly argues in this assignment of error that his trial counsel was ineffective for failing to object to the use of the videotape, but does not separately assign error to this issue. See App.R. 16(A); See, also, Loc.R. 7(B)(7). The Rules of Appellate Procedure clearly state that we "may disregard an assignment of error presented for review if the party raising it fails *** to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). This drafting flaw aside, we again find that a failure to object to the introduction of this evidence falls within the realm of trial tactics, and does not support an ineffective assistance of counsel claim. Taylor, supra, at ¶ 76. Further, because Appellant was unable to overcome the presumption that the trial judge did *Page 12 
not consider inadmissible evidence, he cannot show that the outcome of his trial would have been different but for the admission of the videotape. See Strickland, 466 U.S. at 687. Accordingly, Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED WHEN IT ALLOWED INADMISSIBLE STATEMENTS OF [A.W.] INTO EVIDENCE."
 {¶ 23} In his fourth assignment of error, Appellant contends that the trial court erred when it allowed inadmissible statements of A.W. into evidence.
 {¶ 24} Appellant specifically argues that A.W.'s statements, testified to by other witnesses, were inadmissible under the Ohio Rules of Evidence and violated the Confrontation Clause. He also argues that certain letters and statements made by the child and introduced during the child's testimony were irrelevant. Finally, Appellant contends that A.W.'s statements should have been excluded because there was no prior determination that she was competent at the time the statements were made. Due to Appellant's failure to raise these arguments below, he has deprived the trial court of the opportunity to correct the alleged errors in the first instance and has thereby forfeited the arguments on appeal. Davidson, 79 Ohio St.3d at 121; State v. Quine, 9th Dist. No. 29068, 2002-Ohio-6987, at ¶ 7. These issues may still be assigned as error on appeal if a showing of plain error is made. Hairston at ¶ 9; Crim.R. 52(B).
 {¶ 25} We first address Appellant's argument with regard to the testimony of Heather, Alice Juarez, and A.W. These witnesses testified to statements made *Page 13 
out of court by A.W. As we explained above, the trial court based its guilty finding in large part on the expert witness testimony, not on the testimony of Heather, Juarez or A.W. As such, Appellant cannot make an affirmative showing that the trial court relied on the statements. Even assuming these statements were admitted in error, we find it to be harmless because the trial court relied on the substantial evidence properly testified to by the expert witnesses. Crim.R. 52(A).
 {¶ 26} Appellant also argues that the testimony of Teresa Yuzon, Tonya Nolan, ("Nolan"), Sara Griffith ("Griffith") and Dr. Essel regarding statements made by A.W. amounted to inadmissible hearsay evidence. As we find that these statements were statements made for medical purposes, we do not agree.
 {¶ 27} Evid.R. 803 enumerates several statements that "are not excluded by the hearsay rule, even though the declarant is available as a witness[.]" Included are statements made for medical purposes. These statements are "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). This exclusion from hearsay is based upon the belief that the declarant's subjective motive to seek treatment generally guarantees that the statement is trustworthy.
 {¶ 28} Yuzon was Heather's social worker at Community Health Partners. Yuzon works with patients with HIV and AIDS. Yuzon testified that Heather *Page 14 
brought A. W. to her because she was concerned that Appellant may have molested A.W. During this visit, A.W. informed Yuzon that Appellant "stuck his finger in there and it hurts." Yuzon understood "there" to mean A.W.'s vagina. Due to these statements, Yuzon suggested Heather take A.W. for a physical evaluation with Dr. Crotser. Ohio appellate courts have unanimously found that the statements of children to social workers and counselors are admissible pursuant to Evid.R. 803(4).State v. Rice, 8th Dist. No. 82547, 2005-Ohio-3393, at ¶ 14; State v.Azbell, 5th Dist. No. 04CA11, 2005-Ohio-1704, at ¶ 190; State v.Tillman, 12th Dist. No. CA2003-09-243, 2004-Ohio-6240, at ¶ 22;State v. Ludwick, 11th Dist. No. 2002-A-0024, 2004-Ohio-1152, at ¶ 40;State v. Nasser, 10th Dist. No. 02AP1112, 2003-Ohio-5947, at ¶ 52. These courts have found that the statements at issue were made to social workers for the purpose of being referred for proper medical treatment. This is clearly the case here. Accordingly, this statement was properly admitted as a statement made for medical diagnosis.
 {¶ 29} Similarly, Appellant asserts error with the statements testified to by Nolan. Nolan was a psychotherapist who testified as a representative from Applewood Center. She explained that after A.W.'s initial diagnostic assessment, Heather and A.W. started therapy with her. She stated that this therapy was necessary due in part to allegations of sexual abuse. Nolan testified to statements located in A.W.'s Individual Service Plan, which was a form listing the goals and objectives that the clinician, therapist and family needed to work on together *Page 15 
during the course of treatment. In effect, the Individual Service Plan is the medical diagnosis compiled by the various social workers and therapists with whom A.W. and Heather spoke at Applewood. This court finds particularly relevant that the plan stated that A.W. "was responsive, friendly and easily engaged. She requested that mom and 16-year-old cousin leave the room before she began to discuss sex abuse allegations with clinician. Very articulate and mature for her age." This document was integral in the diagnosis and treatment of A.W. Clearly, this document and the statements contained in it were admissible as statements related to medical treatment and diagnosis. As we stated above, statements made for medical purposes are admissible hearsay because they are based upon the belief that the declarant's subjective motive to seek treatment generally guarantees that the statement is trustworthy. Appellant has made no allegations that these statements were not trustworthy. Accordingly, they were properly admitted.
 {¶ 30} Finally, we find that the statements A.W. made to Griffith and Dr. Essel were admissible as statements made for medical diagnosis and treatment. Griffith is a sexual assault care nurse who examined A.W. Griffith testified that according to her medical records, A.W. had disclosed to Juarez that Appellant had sexually abused. First, as we explained above, any error in admitting statements A.W. made to Juarez was harmless. Further, these statements were used to explain the actions Griffith took with regard to her medical examination, why the *Page 16 
medical exam was necessary and to explain her diagnosis. Finally, it is crucial to the exam to gather all the relevant information to identifying the accuser so that Griffith may further refer her for sexually transmitted disease testing and treatment if necessary. Therefore, we find that statements made to Griffith identifying Appellant as the accuser were necessary for medical treatment and diagnosis.
 {¶ 31} Similarly, statements made to Dr. Essel, who is a board certified obstetrician and gynecologist, regarding the purpose of A.W.'s visit, including that she was brought in by Heather and Juarez because she complained of having penile contact with Appellant about four times, was admissible as an integral part of Dr. Essel's examination and medical diagnosis. It is because of this information that he examined her for signs of sexual assault and sexually transmitted diseases. Accordingly, the statements were properly admitted.
 {¶ 32} Appellant further contends that these statements were inadmissible under the Confrontation Clause of the U.S. Constitution.Crawford v. Washington (2004), 541 U.S. 36. Specifically, Appellant refers us to his previous argument that the trial court erred in declaring A.W. competent to testify. Therefore, Appellant contends, he was unable to cross-examine her in any meaningful way, and thus any out of court statements were admitted in violation of the Confrontation Clause. This argument lacks merit.
 {¶ 33} The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted *Page 17 
with the witnesses against him[.]" The right of confrontation requires, whenever possible, testimony and cross-examination to occur at trial.State v. Allen, 10th Dist. No. 82556, 2004-Ohio-3111, at ¶ 17. In our disposition of Appellant's first assignment of error, we found that the trial court did not err when it determined A.W. competent to testify. Accordingly, Appellant had the opportunity to confront the witness in front of him and the admission of these statements did not violate the Confrontation Clause.
 {¶ 34} Finally, Appellant contends that A.W.'s out of court statements should have been excluded from trial because there was no prior determination that she was competent at the time the statements were made. Again, we point out that no objection was made at trial with regard to this issue. Therefore, we look only for plain error. In his brief, Appellant does not make any argument that A.W. was incompetent at the time she made the statements. Rather, he simply argues that the trial court should have determined whether A.W. was competent at the time she made the statements. He does not argue what that determination would be. A plain error analysis requires a finding that without the alleged error, the outcome of Appellant's case would have been different. Here, Appellant has not shown any evidence, nor does our independent review of the record support a finding that A.W. actually was incompetent at the time she made these statements. We have consistently stated that "[i]f an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out."Cardone v. *Page 18 Cardone (May 6, 1998), 9th Dist. No. 18349, at *8. We cannot find that the outcome of Appellant's trial would have been different had the trial court made a determination as to whether A.W. was competent at the time she made the statements. Accordingly, this argument is without merit.
 {¶ 35} Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V "TRIAL COUNSEL WAS INEFFECTIVE FOR HIS CONTINUING FAILURE TO OBJECT TO OUT-OF-COURT STATEMENTS MADE BY [A.W.], THEREBY DENYING APPELLANT HIS RIGHT TO COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION."
 {¶ 36} In his fifth assignment of error, Appellant contends that his trial counsel was ineffective for his continuing failure to object to out-of-court statements made by the alleged child-victim. We do not agree.
 {¶ 37} Appellant refers to the arguments that he makes in his fourth assignment of error as support for this assignment of error. Therefore, we find that our discussion of Appellant's fourth assignment of error disposes of this argument. As we stated, we find no evidence that but for the alleged errors to which Appellant points in his fourth assignment of error the outcome of his trial would have been different. "An appellate court may analyze the prejudice prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at *Page 19 
¶ 37, citing State v. Loza (1994), 71 Ohio St.3d 61, 83, overruled on other grounds. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Because we find that no plain error existed with the admission of the out of court statements of which Appellant complains, we similarly find that his trial counsel was not ineffective for failing to object to these statements.
 {¶ 38} Accordingly, this assignment of error is overruled.
 III. {¶ 39} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 20 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 SLABY, P. J., DICKINSON, J., CONCUR. *Page 1