[Cite as *State v. Hendricks*, 2011-Ohio-3796.]

STATE OF OHIO          )                    IN THE COURT OF APPEALS
                             )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT      )

STATE OF OHIO                                 C.A. No.      25133

      Appellee

      v.                                    APPEAL FROM JUDGMENT
                                       ENTERED IN THE
MICHAEL W. HENDRICKS               COURT OF COMMON PLEAS
                                       COUNTY OF SUMMIT, OHIO
      Appellant                     CASE No.     CR 09 02 0594(B)

DECISION AND JOURNAL ENTRY

Dated: August 3, 2011

MOORE, Judge.

**{¶1}** Appellant, Michael W. Hendricks, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** On February 26, 2009, several members of the Akron Police Department visited Hendricks' home to investigate drug complaints regarding a meth lab. Detective Ted Male and Officer David Crockett, members of the clandestine laboratory enforcement team, each testified to extensive training and experience related to methamphetamine lab investigation. Officer Crockett has actually manufactured methamphetamine as part of his training. When the officers approached Joseph Logan, a co-defendant, walking down the driveway of Hendricks' home, they noticed a distinct chemical odor that they associated with the production of methamphetamine. Several other officers remained with Logan while Detective Male and Officer Crockett approached the home and knocked on the door. Through a window in the door they observed

Hendricks climb the basement stairs and answer the door. Hendricks invited the officers to enter the home. They again detected a strong chemical odor, which they associated with meth labs. Officer Crockett went downstairs and encountered what he believed to be a meth lab. The officers secured the premises and left to obtain a search warrant. They returned and searched Hendricks' residence, ultimately seizing methamphetamine and numerous items related to the manufacture of methamphetamine.

{¶3} On March 16, 2009, the Summit County Grand Jury indicted Hendricks on one count of illegal manufacture of drugs in violation of R.C. 2925.04(A), a felony of the first degree, illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), a felony of the second degree, possessing criminal tools in violation of R.C. 2923.24, a felony of the fifth degree, aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1), a felony of the fifth degree, three counts of endangering children in violation of R.C. 2919.22(B)(6), felonies of the third degree, and illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. The misdemeanor charge of illegal use or possession of drug paraphernalia was dismissed prior to trial.

{¶4} The charges were tried to a jury from September 28, 2009, through October 1, 2009. The court declared a mistrial and dismissed count one, illegal manufacture of drugs. On October 5, 2009, the jury returned guilty verdicts on each remaining charge. The court sentenced Hendricks to five years of incarceration for illegal possession of chemicals for the manufacture of drugs, one year of incarceration for possessing criminal tools, one year of incarceration for aggravated possession of drugs, and two years of incarceration for each charge of endangering children. The court ordered the sentences for illegal possession of chemicals for the manufacture

of drugs, possessing criminal tools, and aggravated possession of drugs to be served concurrently for a total of five years. The court further ordered that two of the sentences for endangering children were to run concurrently with each other but consecutively to the third sentence for endangering children for a total of four years. The total of four years for endangering children was ordered to run consecutively to the previously described five-year sentence for a total of nine years of incarceration.

{¶5}  Hendricks timely filed a notice of appeal. He raises two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW AND/OR COMMITTED PLAIN ERROR IN DENYING [HENDRICKS'] MOTION TO EXCLUDE ANY EVIDENCE THAT WAS DESTROYED BY THE STATE AND THUS NOT PRESERVED NOR MADE AVAILABLE TO THE DEFENSE FOR INDEPENDENT TESTING, AND TO PROHIBIT ANY TESTIMONY OF POLICE OFFICERS REGARDING THE IDENTITY OF THE CHEMICALS SEIZED BUT UNTESTED."

{¶6}  In his first assignment of error, Hendricks contends that the trial court committed error or plain error in denying his motion to exclude any evidence that was destroyed by the State during testing and thereby not preserved for, or available to, the defense for independent testing. He also contends that the trial court should have prohibited the testimony of police officers regarding the identity of the chemicals seized but untested. We do not agree.

{¶7}  The Ohio Revised Code provides a mechanism whereby the accused in a drug case may request in writing that a sample of the chemical be preserved for testing. R.C. 2925.51(E). There is nothing in the record to indicate that Hendricks served a written request upon the prosecutor to preserve the "substance[s] that [are] * * * the basis of the alleged

violation * * * for the benefit of independent analysis performed by a laboratory analyst employed by the accused[.]" Had such a request been made, the statute then provides that "[i]f the prosecuting attorney determines that such a sample portion cannot be preserved and given to the accused's analyst, the prosecuting attorney shall so inform the accused person or his attorney." Id. In this case, because Hendricks did not avail himself of the statutory mechanism by making a written request for preservation of any substance, the prosecutor was not put on notice to preserve any of the chemicals. Based upon precedent of the Ohio Supreme Court, we conclude that Hendricks waived this argument for appeal.

{¶8} In *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, the Supreme Court of Ohio analyzed a similar subsection of R.C. 2925.51. R.C. 2925.51(A) provides that "a laboratory report from the bureau of criminal identification and investigation," or other described laboratories, "signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance * * * is prim-facie evidence of the content, identity, and weight * * * of the substance." However, the report does not constitute prima-facie evidence of the content, identity, and weight "if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report." R.C. 2925.51(C). In *Pasqualone*, a prosecution for possession of cocaine, the defendant's counsel did not demand that the prosecution produce the analyst who signed the report identifying the cocaine. *Pasqualone* at ¶5. The state offered the laboratory report into evidence and defense counsel objected on the basis that Pasqualone's "Sixth Amendment Confrontation Clause rights would be

violated if he was not permitted to cross-examine the laboratory analyst who had conducted the testing and signed the report." Id. at ¶6. The Court determined that because Pasqualone's counsel did not demand the analyst's testimony in accordance with the procedure set forth in R.C. 2925.51(C), Pasqualone had waived his confrontation rights. Id. at ¶21.

{¶9} The Supreme Court went on to distinguish Confrontation Clause rights from those that a defendant must waive personally. Id. at ¶23. The Court favorably cited *United States v. Plitman* (C.A.2, 1999), 194 F.3d 59, 63, for the proposition that "the rights that defense counsel may waive on a defendant's behalf because they concern strategic and tactical matters include selective introduction of evidence, stipulations, objections, and pretrial motions." (Internal quotations omitted.) *Pasqualone* at ¶25. The conclusion that Hendricks waived his right to independent analysis of the substances follows logically from *Pasqualone*.

{¶10} In this case, a different subsection of R.C. 2925.51 is implicated from that relied upon in *Pasqualone*. The subsection at issue in this case provides that the defendant "is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is, or of each of the substances that are, the basis of the alleged violation preserved for the benefit of independent analysis[.] * * * The prosecuting attorney shall provide the accused's analyst with the sample portion at least fourteen days prior to trial[.] * * * If the prosecuting attorney determines that such a sample portion cannot be preserved and given to the accused's analyst, the prosecuting attorney shall so inform the accused person or his attorney." R.C. 2925.51(E). If the sample cannot be preserved, the accused, upon written request to the prosecutor, is entitled to have his analyst present at an analysis of the substance. Id. The statute further provides that if a defendant is indigent, a qualified analyst can be appointed by the court. Id.

{¶11} In this case, Hendricks specifically demanded the testimony of the laboratory analyst pursuant to R.C. 2925.51(C) but did not make a request to preserve any of the chemicals or substances for independent testing under R.C. 2925.51(E). Instead, on the morning of trial, Hendricks filed a motion in limine that requested that the trial court prohibit the introduction of evidence "regarding items destroyed by the State[.]" The motion in limine was insufficient to comply with the requirements of R.C. 2925.51(E). We therefore hold that Hendricks waived his right to independent testing.

{¶12} In so holding, we observe that this right is exclusively statutory, embodied only in R.C. 2925.51(E), rather than constitutional in nature. See *In re Nevelos*, 11th Dist. No. 2007-G-2804, 2008-Ohio-3606, at ¶17 (differentiating between the procedural safeguards protecting a constitutional right to counsel versus a statutory right to counsel: the constitutional right is protected by a strong presumption against waiver whereas the statutory right can be waived by failure to pursue the right.) Moreover, as cited in *Pasqualone*, this right falls squarely within the strategic and tactical decisions listed in *Plitman*, including "selective introduction of evidence, stipulations, objections, and pretrial motions." *Pasqualone* at ¶25, quoting *Plitman*, 194 F.3d at 63. For these reasons, we believe it appropriate to extend the holding of *Pasqualone* to include the right to independent testing within the group of rights waivable by counsel.

{¶13} Waiver, "the intentional relinquishment or abandonment of a known right[,]" *Pasqualone* at ¶13, is particularly applicable in this case because Hendricks' actions demonstrated knowledge of the related provisions found in R.C. 2925.51(C). In exercising his right to confrontation under R.C. 2925.51(C) but not requesting the substances for independent testing under R.C. 2925.51(E), we can infer that Hendricks abandoned this right. See *Nevelos* at ¶17 (waiver of statutory rights can occur when one is aware of but takes no steps to pursue a

right). Accordingly, the right to independent testing under R.C. 2925.51(E) is waivable generally, and was specifically waived by Hendricks in this case.

{¶14} With respect to Hendricks' further contention that the court should have excluded the testimony of officers regarding the identity of chemicals seized but untested, he has failed to direct this Court to any instance of such testimony from the transcript of trial. App.R. 12(A)(2). "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. No. 18349, at \*8.

{¶15} Because Hendricks waived his right to independent testing under R.C. 2925.51(E) and failed to direct this Court to instances of erroneously admitted testimony, we do not address the merits of his first assignment of error.

## ASSIGNMENT OF ERROR II

"APPELLANT HENDRICKS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."

{¶16} In his second assignment of error, Hendricks contends that he was denied the effective assistance of counsel. We do not agree.

{¶17} In order to show ineffective assistance of counsel, Hendricks must satisfy a two-prong test. *Strickland v. Washington* (1984), 466 U.S. 668, 669. First, he must show that his trial counsel engaged in a "'substantial violation of any * * * essential duties to his client.'" *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396. Second, he must show that his trial counsel's ineffectiveness resulted in prejudice. *Bradley*, 42 Ohio St.3d at 141-142, quoting *Lytle*, 48 Ohio St.2d at 396-397. "Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel." *State v. Velez*, 9th Dist. No. 06CA008997, 2007-Ohio-5122, at ¶37, citing *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. This Court need not

address both *Strickland* prongs if Hendricks fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶10.

{¶18} Hendricks contends that he was denied the effective assistance of counsel because none of his counsel in the court below served a request for independent testing of the chemicals found in his home. He did not, however, cite any authority in support of this contention. App.R. 16(A)(7). In any event, we conclude that Hendricks is unable to demonstrate prejudice flowing from the failure of any of his counsel to request independent testing of the chemicals.

{¶19} Prior to retaining his trial counsel, Hendricks was represented by three separate attorneys, none of whom served on the prosecutor a request for independent testing. If the BCI analyst's testimony had been the only evidence presented on the identity of the chemicals, it is possible that Hendricks could show that the outcome of the trial might be different due to independent testing. At trial, however, the State introduced crystal iodine and four separate exhibits of actual methamphetamine. These substances were not consumed during the testing process. Because the existence and identity of these substances alone could form the basis for Hendricks' convictions, he is unable to demonstrate prejudice flowing from counsel's failure to demand independent testing.

{¶20} Relevant to the tested substances, Hendricks was convicted of illegal assembly or possession of chemicals for the manufacture of drugs, possessing criminal tools, and aggravated possession of drugs. R.C. 2925.041(A), which proscribes the illegal assembly or possession of chemicals for the manufacture of drugs, provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance * * * with the intent to manufacture a controlled substance[.]" R.C. 2923.24(A), which proscribes possessing criminal tools, provides that "[n]o person shall possess or have under the person's

control any substance * * * with purposes to use it criminally." R.C. 2923.24(B)(3) provides that "the following constitutes prima-facie evidence of criminal purpose: Possession or control of any substance * * * under circumstances indicating the item is intended for criminal use." Hendricks possessed crystal iodine, a chemical that Lieutenant Brian Simcox testified is used in the production of methamphetamine. The circumstances surrounding Hendricks' possession of the crystal iodine indicated that it was intended for a criminal use, the manufacture of methamphetamine. The officers found methamphetamine in the house, along with what was described as a meth lab.

{¶21} Hendricks was also convicted of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1), which provides, relevant to this assignment of error, that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The State introduced four separate exhibits that contained methamphetamine, two exhibits in solid form and two exhibits in bi-level liquid form, that were not destroyed during the chemical-analysis process.

{¶22} With respect to each of his three convictions that were supported by materials that could have been destroyed during the chemical-analysis process, substances were introduced at trial that would support each conviction. These substances were not consumed during testing and Hendricks has made no attempt to have an independent analyst test these substances. Therefore, Hendricks cannot demonstrate that the outcome would likely be different had his counsel not failed to request the preservation of any substances for independent testing under R.C. 2925.51(E). *Velez* at ¶37. Accordingly, he has failed to demonstrate prejudice and we need not address the first prong of *Strickland*. *Ray* at ¶10.

{¶23} Accordingly, Hendricks' second assignment of error is overruled.

10

III.

**{¶24}** We decline to address the merits of Hendricks' first assignment of error. Hendricks' second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶25} With respect to the majority's resolution of the first assignment of error, I concur in its judgment. I do so, though, solely because Mr. Hendricks failed to avail himself of the procedures outlined in R.C. 2925.51(E). Mr. Hendricks never requested that an independent analysis of the substances be conducted, and thus, the State was not notified of the need to preserve the evidence. Further, the record does not reflect that the State improperly destroyed the evidence so as to preclude Mr. Hendricks from availing himself of the procedures in R.C. 2925.51(E). Accordingly, I agree that Mr. Hendricks' argument is properly overruled. In addition, I would not rely on *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, in overruling this assignment of error.

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.